IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN W. TAYLOR,

  Plaintiff

v.                       CIVIL No. JKB-13-1832

NORTHROP GRUMMAN
SYSTEMS CORPORATION,

  Defendant

## MEMORANDUM

John W. Taylor ("Plaintiff") brought this suit against the Northrop Grumman Systems Corporation ("Defendant") alleging employment discrimination on the basis of age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, the Older Workers Benefit Protection Act ("OWBPA") of 1990, 29 U.S.C. §§ 623, 626, 630, and Maryland state law, Md. Code Ann., STATE GOV'T §§20-601, *et seq.* Now pending before the Court is Defendant's motion to dismiss (ECF No. 9).[1] The issues have been briefed and no hearing is required. Local Rule 105.6. For the reasons set forth below, the motion will be GRANTED.

    I.      **BACKGROUND**[2]

Plaintiff is a fifty-seven year-old man who was employed by Defendant in various capacities for over twenty years. (Am. Compl. ¶¶ 1, 5, ECF No. 12). During this period, he

---

[1] Given that Plaintiff amended his complaint as a matter of course on July 15, 2013 (ECF No. 12), this motion to dismiss is directed at the amended complaint. FED. R. CIV. P. 15(a)(1)(B); 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1476 (3d ed.) (collecting cases).
[2] The facts are recited here as alleged by the Plaintiff, this being a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

survived major layoffs, was regularly promoted, and "always received strong yearly reviews." (*Id.* ¶ 6). As a result of a car accident that occurred on June 13, 2007, Plaintiff was injured and went on short-term disability leave for six months. (*Id.* ¶ 8). In November, 2009, after Plaintiff failed to secure long-term disability payments from his insurance carrier, UNUM, he returned to work for Defendant. (*Id.* ¶¶ 9, 10, 11). He was given a temporary assignment and ninety days to find a permanent project within the company or be laid off. (*Id.* ¶¶ 11, 12). Plaintiff applied for over sixty job openings within the company but had very few interviews. (*Id.* ¶¶ 13, 14).

Plaintiff complains of an incident that occurred during an interview, in which one of Defendant's managers told Plaintiff: "we are looking for someone earlier on in his career." (*Id.* ¶ 14). On the basis of this incident, in 2010, Plaintiff filed a charge of age-based employment discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 16).

On February 1, 2010, Plaintiff signed a severance agreement ("Agreement") with Defendant, which included a provision that Plaintiff would not sue Defendant ("Waiver"). (*Id.* ¶¶ 18, 24; ECF No. 5, Ex. A ¶¶ 3,4).[3] However, Plaintiff alleges that the Agreement was signed under duress because he was "facing bankruptcy and the loss of his home" and would have "no income at all" if he failed to sign it. (Am. Compl. ¶¶ 18, 21, 24).

On March 28, 2013, the EEOC issued Plaintiff a Right to Sue Letter. (*Id*. ¶ 17). On May 21, 2013, Plaintiff filed this suit alleging employment discrimination on the basis of age in the Circuit Court for Howard County, Maryland. (ECF No. 2). On June 24, 2013, the action was

---

[3] The Separation Agreement and General Release ("Agreement") was not included in the complaint. Although generally extrinsic evidence is not considered at the 12(b)(6) stage, "when a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *Am. Chirporactic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (internal citations omitted). Here, Defendant attached the Agreement as Exhibit A of its motion to dismiss (ECF No. 9, Ex. A). The Agreement is integral to the complaint and is explicitly relied on in the complaint. (Am. Compl. ¶¶ 18, 19, 20, 21, 22, 23, 24). Further, Plaintiff does not dispute the authenticity of the Agreement. (ECF No. 11 at 4). Therefore, the Court will consider the Agreement in evaluating the present motion to dismiss.

removed to this Court on the basis of diversity (ECF No. 1). Defendant now moves to dismiss the complaint for failure to state a claim for which relief can be granted. (ECF No. 9).

## II. LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. *Bell Atl. v. Twombly*, 550 U.S. 544, 556-57 (2007). In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 556 U.S. at 679.

## III. ANALYSIS

### a. ADEA claim

An individual may waive their right to bring an action under the ADEA, provided the waiver is "knowing and voluntary." 29 U.S.C. § 626(f); *Adams v. Moore Bus. Forms, Inc.*, 224 F.3d 324, 328 (4th Cir. 2000); *Cassiday v. Greenhorne & O'Mara, Inc.*, 220 F.Supp.2d 488 (D. Md. 2002). The OWBPA provides that "a waiver may not be considered knowing and voluntary unless at a minimum" it satisfies specific requirements. 29 U.S.C. § 626(f)(1). These strictures implement Congress' policy of protecting the rights and benefits of older workers. *Adams*, 224

F.3d at 327 (citing *Oubre v. Energy Operations, Inc.* 522 U.S. 422, 427 (1998)). Specifically, the OWBPA requires that the waiver (1) be part of an agreement between the individual and the employer that is written in a manner calculated to be understood by that individual, § 626(f)(1)(A); (2) specifically refer to rights or claims arising under the ADEA, § 626(f)(1)(B); (3) not purport to waive claims arising after the waiver's execution § 626(f)(1)(C); (4) be supported by consideration in addition to anything of value to which the individual already is entitled, § 626(f)(1)(D); (5) include written advice to consult with an attorney prior to executing it, § 626(f)(1)(E); (6) provide the individual with at least forty-five days within which to consider the agreement, § 626(f)(1)(F)(ii); (7) provide the individual with at least seven days after execution in which to revoke the agreement, § 626(f)(1)(G).[4] *Adams*, 224 F.3d at 328; *Cassiday*, 220 F.Supp.2d at 491. In addition, where a waiver is requested by the employer in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer must inform the individual in writing about (i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such programs, 29 U.S.C. § 626(f)(1)(H)(i); and (ii) the job titles and ages of all individuals eligible or selected for the program, and the ages and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program, § 626(f)(1)(H)(ii).

Here, Plaintiff does not dispute that the Waiver and the Agreement satisfy all of the OWBPA's enumerated requirements for a valid ADEA waiver. (1) The Agreement was written in a manner calculated to be understood by Plaintiff, who holds an engineering degree and an MBA. 29 U.S.C. § 626(f)(1)(A); (Am. Compl. ¶ 7). (2) The waiver specifically refers to

---

[4] Where the waiver is in settlement of a charge filed with the EEOC, it must satisfy the conditions set forth in 29 U.S.C. §§ 626(f)(1)(A)-(E), as well as provide the individual with a "reasonable period of time within which to consider the agreement." § 626(f)(2).

Plaintiff's rights under the ADEA. (ECF No. 5, Ex. A ¶ 3). (3) The waiver specifically excludes "claims arising after the date Employee signs this Agreement." (*Id.* ¶ 4). (4) Plaintiff received $98,277 in severance pay. (*Id.* at final page). (5) The Agreement includes written encouragement to consult with an attorney. (*Id.* ¶¶ 15, 19). (6) The Agreement provided Plaintiff with forty-five days to consider the Agreement. (*Id.* ¶ 15).[5] (7) The Agreement provided Plaintiff with seven days after signing to revoke his acceptance. (*Id.* ¶ 17). Further, the Agreement recites that Plaintiff was "provided with information about the job titles and ages of employees selected and not selected for termination as part of this group termination program." (*Id.* ¶ 15). While the Agreement does not mention that Defendant provided Plaintiff with information about any class, unit, or group of individuals covered by such program, any eligibility factors for such program, or any time limits applicable to such programs, Plaintiff has not alleged that Defendant failed to comply with this requirement. 29 U.S.C. § 626(f)(1)(H)(i). Therefore, none of Plainitff's allegations would support a finding that the Waiver failed to comply with the OWBPA's requirements.

We now turn to Plaintiff's contention that the Agreement was signed under duress and is therefore unenforceable. While the Agreement meets the requirements set forth by the OWBPA, these statutory factors are not exclusive and other circumstance may impact whether a waiver is knowing and voluntary. *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1228 (10th Cir. 1999); *Cassiday*, 220 F.Supp.2d at 492; see also *Griffin v. Kraft Gen. Foods, Inc.* 62 F.3d 368, 373-74 (11th Cir. 1995) (holding that "nonstatutory circumstances such as fraud, duress, or coercion in connection with the execution of the waiver, may render an ADEA waiver not 'knowing and

---

[5] To the extent that this waiver is in settlement of Plaintiff's charge filed with the EEOC, the Court finds that the forty-five days given to Plaintiff to consider the Agreement was a reasonable period of time. 29 U.S.C. § 626(f)(2); *see Morris v. Waste Management of Va., Inc.*, 95 F.Supp.2d 586 (E.D. Va. 2000) (finding that twenty-seven days was a reasonable time within which to consider a waiver in settlement of a charge filed with the EEOC for age-based employment discrimination).

voluntary'"). Indeed, the OWBPA states that the specific requirements it sets forth are "a minimum." 29 U.S.C. § 626(f)(1). Further, the legislative history of the statute confirms the plain meaning of the text.

> The individual [waiving his rights] … *must have acted in the absence of fraud, duress, coercion, or mistake of material fact*. The Committee expects that courts reviewing the "knowing and voluntary" issue will scrutinize carefully the *complete circumstances* in which the waiver was executed . . . .
>
> The bill establishes *specified minimum requirements* that must be satisfied before a court may proceed to determine factually whether the execution of a waiver was "knowing and voluntary."

*Bennett*, 189 F.3d at 1229 (quoting S.Rep. No. 263, at 31-32 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1537 (emphasis added)).

In order to establish duress under Maryland law, there must be a "wrongful act which deprives an individual of the exercise of his free will." *Eckstein v. Eckstein*, 379 A.2d 757, 761 (1978) (citing *Central Bank v. Copeland,* 18 Md. 305 (1862)); s*ee also Bennett*, 189 F.3d at 1231 (using definition of duress under Colorado law to evaluate claim of duress in ADEA waiver case). Specifically, economic duress is not available as a defense where there is no showing that the person against whom it is asserted "caused the financial embarrassment or economic duress." *Shilman v. Hobstetter*, 241 A.2d 570, 578 (Md. 1968) (citing *Shriver v. Druid Realty Co. of Baltimore City*, 131 A. 815 (Md. 1926)). As sister circuits applying similar standards of duress have noted, the financial consequences of job loss, by themselves, are insufficient to establish a claim of duress. *Melanson v. Browning-Ferris Indus.*, 281 F.3d 272, 277 (1st Cir. 2002) ("Nor may incapacity or duress, without more, be inferred from merely the emotional and financial stress associated with loss of a job. To hold otherwise would be to make it virtually impossible for employers and employees to enter into binding settlements of employment disputes occasioned by job losses, lay-offs and the like."); *Dorn v. General Motors Corp.*. 131 Fed.Appx.

6

462, 468 (6th Cir. 2005) (citing *Adams v. Philip Morris, Inc.* 67 F.3d 580 (6th Cir. 1995)) (holding that economic pressure to accept an attractive severance package and settle any claims against an employer does not rise to the level of economic duress); *see also Cassiday*, 220F. Supp.2d at 492 ("[B]oth law and policy suggest that one's personal economic burdens resulting from the loss of a job, should not constitute 'duress' for the purpose of invalidating a termination release.").

Here, Plaintiff's claim of duress rests solely on his allegation that at the time he executed this agreement, he was "facing bankruptcy and the loss of his home." (Am. Compl. ¶ 21). Plaintiff does not allege that Defendant was responsible for his precarious financial situation. While Plaintiff does allege that his application for long-term disability was "stalled" by his insurance carrier, UNUM, he does not allege any relationship between UNUM and Defendant. (*Id.* ¶ 21). Plaintiff has therefore failed to state a claim for age-based discrimination under the ADEA for which relief can be granted.

### b. State Law Claim

Plaintiff's state law claims under Md. Ann. Code § 20-606 are untimely. In order to be timely, a civil action for unlawful employment practice under Maryland state law, must be filed no later than two years after the alleged unlawful employment practice occurred. Md. Code Ann. § 20-1013(a)(3).[6]

Here, the alleged unlawful employment practice happened before February 1, 2010. (Am. Compl. ¶¶ 14, 18). Plaintiff filed suit in the Circuit Court for Howard County, Maryland on May

---

[6] A plaintiff must also file a civil action no sooner than 180 days after filing a "timely administrative charge or a complaint under federal, State, or local law." Md. Code Ann. §§ 20-1013(a)(1)-(2). The Court notes that the ADEA does not require a plaintiff to wait for a Right to Sue Letter to begin a civil action. Rather, the ADEA merely provides that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]." 29 U.S.C. § 626(d)(1). There was therefore no impediment to Plaintiff filing his state and federal claims as part of a single action within the respective statutes of limitations.

21, 2013. (ECF No. 2). Plaintiff therefore failed to file within the two-year statute of limitations. His claim under Md. Ann. Code § 20-606 is time-barred and must therefore be dismissed.

## IV. CONCLUSION

Accordingly, an order shall issue GRANTING Defendant's Motion to Dismiss (ECF No. 9).

Dated this 5th day of September, 2013

BY THE COURT:

/s/
James K. Bredar
United States District Judge